UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOSHUA MOODY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Case No. 19-cv-01151 (TSC) |
| ) | |
| v. ) | |
| ) | |
| MIKE POMPEO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# ORDER

Upon consideration of Plaintiffs' Motion for a Temporary Restraining Order and/or a Preliminary Injunction (ECF No. 4), Defendants' opposition (ECF No. 8), Plaintiffs' Reply (ECF No. 12), the arguments presented at the May 10, 2019 oral argument, and Plaintiffs' May 13, 2019 filing regarding expedited processing timelines (ECF No. 13), and for the reasons set forth below, the court hereby DENIES Plaintiffs' motion.

A. Findings of Fact

- Plaintiff Joshua Moody, a United States citizen, and Plaintiff Sahar Al-Gabri, a Yemeni national, were married in January 2018 and have resided in Saudi Arabia through Moody's employment-based resident permit since that time. (ECF No. 1 ("Compl.") at ¶¶ 1–2.)

- On August 5, 2018,[1] with knowledge that Moody's employment contract would end on May 3, 2019, Al-Gabri applied for a U.S. immigrant visa to allow her to relocate to the United States with her husband after his contract ended. (*Id.* at ¶¶ 56–57.)

---

[1] Although the Complaint states August 5, 2019, Exhibit 8 states that the application was filed on August 5, 2018.

1

- Pursuant to the State Department's Foreign Affairs Manual, "immediate relative (and fiancé(e)) visas [should] be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security."  9 FAM 504.7-2(b) (2015); (*see also* ECF No. 4-1 ("Pls.' Mot.") at 9).

- Pursuant to Presidential Proclamation 9645, entrance of Yemeni nationals into the United States is suspended, but the Proclamation provides for waivers on a case-by-case basis.  Once a Yemeni national applies for a U.S. immigrant visa, he or she is denied. (ECF No. 8 ("Defs.' Opp") at 3.)  If the denial is based solely on the Proclamation, the applicant will automatically be considered for a waiver.  (*Id.* at 3–4.)

- On September 5, 2018, Al-Gabri was interviewed by a U.S. consular officer, given a refusal notice, informed that she would be considered for a waiver, and asked to provide additional information.  (Compl. at ¶¶ 58–60.)  Al-Gabri subsequently provided the requested information.  (*Id.* at ¶ 61.)

- On February 25, 2019, the U.S. embassy notified Moody's senator that it had requested that her waiver application be placed in the expedited review queue.  (ECF No. 4-2 ("Moody Decl.") at ¶ 24.)

- On April 30, 2019, Al-Gabri's waiver application was designated for expedited review. (May 10, 2019 Oral Argument.)

- As of January 2019, there were 11,000 waiver applications awaiting review.  (*Id.*)  Since that time, 2,673 applications waivers have been processed.  (*Id.*)  However, the number of pending applications continues to increase because thousands of individuals continue to apply for visas.  (*Id.*)

- Expedited waiver applications can take anywhere from several weeks to several months to review. (*Id.*)

- Neither party has identified any statute governing the time within which the government must review a regular or expedited waiver application.

- The Government has not provided any comparative data points for this court to consider. However, by Declaration filed May 13, 2019, Plaintiffs provided two comparative data points. (*See* ECF No. 13-1 ("Nimer Decl.").) One applicant filed a petition for writ of mandamus and complaint for injunctive relief after her waiver application had been pending for approximately thirteen months. (*Id.* at ¶¶ 8–12.) Two days after the lawsuit and four days after she was told her application could not be expedited, she received an immigrant visa. (*Id.*) Another applicant brought her suit after her waiver application had been pending for approximately nine months. (*Id.* at ¶¶ 13–14.) She received a visa within forty-nine days of requesting expedited review. (*Id.*)

- As of May 4, 2019, Plaintiffs continue to reside, without work authorization, in Saudi Arabia, and Al-Gabri is at least eighteen weeks pregnant. (May 10, 2019 Oral Argument.)

- The Saudi Arabian authorities have not sought to deport Plaintiffs. (*Id.*)

- Legally, Al-Gabri, who has lived in Saudi Arabia for most of her life, can reside in Yemen. (Pls.' Mot. at 13–14; May 10, 2019 Oral Argument.) However, Al-Gabri does not want to reside in Yemen for a variety of reasons, including that she believes she would be compelled to participate in religious observances and practices against her

- will, Yemen frequently experiences military air strikes, and blockades are preventing basic human necessities from reaching the Yemeni people. (Pls.' Mot. at 14–15.)

- Moody cannot safely travel to Yemen with his wife because the U.S. Department of State has advised U.S. citizens to not travel to Yemen due to the risk of terrorism, civil unrest, health risks, kidnapping, and armed conflict. (*Id.* at 14–16.)

- Al-Gabri could travel to Djibouti or Malaysia on a Yemeni passport and seek a visa upon arrival. (Defs.' Opp. at 15.) In addition, both countries have embassies that could complete the processing of the waiver request. (*Id.*)

- Moody and Al-Gabri have $40,000 in savings that they can use to seek tourist visas if necessary. (Pls.' Mot at 16; Moody Decl. at ¶ 34.)

B. <u>Analysis</u>

In order to prevail on a motion for a preliminary injunction, movants must show that: (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy" that is "never awarded as of right." *Id.* at 24 (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). The D.C. Circuit has applied a sliding scale approach to evaluating preliminary injunctions, such that an unusually strong showing on one factor could make up for a weaker showing on another. *See, e.g.*, *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). It has been suggested that the movants' showing of a likelihood of success, however, is a "'free-standing requirement for a preliminary injunction.'" *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011).

1. <u>Likelihood of Success on the Merits</u>

As Defendants note, the injunction Plaintiffs seek will alter as opposed to preserve the status quo.  As stated in *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4–5 (D.D.C. 1997), *aff'd*, 159 F.3d 636 (D.C. Cir. 1998),

> The party that moves for a mandatory preliminary injunction must do more than merely raise a serious question about the law under which its predicates the right of recovery.  In such cases, "where a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction."  *Stanley v. University of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994).  Thus, "where an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction."  *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997).  As a rule, "[w]hen a mandatory preliminary injunction is requested, the district court should deny such relief 'unless the facts and law clearly favor the moving party.'"  *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)) (emphasis added); *accord Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

On the record before the court, the facts and law do not clearly favor Plaintiffs.  While Plaintiffs have presented strong arguments regarding the inapplicability of the consular non-reviewability doctrine and Defendants' mandatory, non-discretionary duty, Plaintiffs have not provided the court with any basis—grounded in case law or statistical evidence—to find that an eight-month delay is unreasonable.  And, in light of the extended period that individuals wait for similar visas, this court cannot find at this time that eight months is *per se* unreasonable without expedited status or that eleven days is *per se* unreasonable with expedited status.

Accordingly, because Plaintiffs have not demonstrated that the delay is *per se* unreasonable, or unreasonable given the circumstances attendant to this case, Plaintiffs have not established a likelihood of success on the merits; they have established only that their claims are plausible.

    2.  <u>Irreparable Harm</u>

The D.C. Circuit has "set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "First, the injury must be both certain and great; it must be actual and not theoretical. The moving party must show the injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." *Id.* at 297–98 (citations, brackets, and internal quotation marks omitted). "Second, the injury must be beyond remediation." *Id.* at 298. "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [preliminary relief], are not enough." *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Here, while Plaintiffs have demonstrated that circumstances in Yemen are indeed grave, they have not demonstrated irreparable harm. While it is true that as of May 3, 2019, Plaintiffs do not have a legal basis to remain in Saudi Arabia, it is not the case, however, that either Plaintiff must relocate to Yemen at this time. Plaintiffs have not received any indication that they may be forced to leave Saudi Arabia. There are at least two other countries that would permit Plaintiffs to enter with their current legal status and apply for/potentially obtain a visa upon arrival. And Plaintiffs have savings that can be used to apply for visas in other countries.

Currently, Plaintiffs' relocation to Yemen is merely possible; it is not inevitable. Defendants are put on notice that Plaintiffs' circumstances, coupled with additional delay, may result in the ripening of Plaintiffs' claim of irreparable harm. However, because Plaintiffs' injuries are not certain and have not ripened to the point where they are beyond remediation, the court finds that Plaintiffs have not established irreparable harm.

*   *   *

Having determined that Plaintiffs have failed to establish a likelihood of success on the

merits or irreparable harm, the court need not assess the remaining factors.  Accordingly, Plaintiffs' motion for a temporary restraining order and/or a preliminary injunction is DENIED.

It is hereby ORDERED that on or before May 17, 2019, the parties shall file a joint status report informing the court on how they wish to proceed.  The report shall address, but not necessarily be limited to, any future motion for expedited discovery and a proposed schedule for Defendants to provide the court with periodic updates regarding the total number of pending waiver applications, the number of pending expedited waiver applications, and the status of Al-Gabri's waiver application.

Date:  May 13, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge